IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

SHERRY GOLDSBY, on behalf of herself and all others similarly situated,

Plaintiffs,

v.

RENOSOL SEATING, LLC,

Defendant.

CIVIL ACTION NO. 2:08-00148-KD-N

REPORT AND RECOMMENDATION

This action is before the Court on the motion (doc. 140)[1] filed by the individual defendants, David Ash, Pete Bernier, Connie Messer, Wayne Savage, Ricky Brown and Robert Stricklin, to reconsider the Order entered on September 24, 2012, (Doc. 138), which declared the motion to dismiss (doc. 109) filed by these individual defendants to be moot.[2] This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636 (b)(1)(B) for entry of a report and recommendation. Upon consideration of the motion to reconsider (doc. 140), plaintiffs' response in opposition thereto (doc. 142), the individual defendants' reply (doc. 144), and all other pertinent portions of the record, the motion to

[1] The motion is styled as "Defendants' Motion for Reconsideration of This Court's September 24, 2012 Order Declaring Defendants' Motion to Dismiss as Moot, or in the Alternative, Defendants' motion or Leave to Renew the Motion to Dismiss, or in the Alternative, Motion for Judgment on the Pleadings."

[2] The Order entered on September 24, 2012 (doc. 109), stated that Defendants' motion to dismiss was moot in view of the consolidation of three related cases (doc. 91), the lifting of the stay previously imposed in this case, and the filing of plaintiffs' Amended Complaint on July 13, 2012 (doc. 125). In addition, as discussed in this order, the motion was rendered moot by the Stipulation and Agreed Order entered by the United States Bankruptcy Court for the Southern District of New York on April 9, 2012. (Doc. 101-1).

reconsider the Court's prior order finding defendants' motion to dismiss moot is **GRANTED.** Upon consideration of defendants' motion to dismiss (doc. 109), plaintiffs' response in opposition thereto (doc. 110), defendants' reply (doc. 111) and all other pertinent portions of the record, it is recommended that the motion to dismiss be **DENIED**.

I. Background and Procedural History.

On March 18, 2008, Sherry Goldsby filed this collective action against Renosol Seating, LLC ("Renosol") on behalf of herself and similarly-situated current and former employees of Renosol (the "Initial Renosol Action") asserting violations of the Fair Labor Standards Act ("FLSA"). (Doc. 91 at 1-2). On July 7, 2009, Renosol filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States District Court for the Southern District of New York. (*Id*. at 2). On July 14, 2009, this Initial Renosol Action was stayed (doc. 63) pursuant to 11 U.S.C. § 362(a).

On October 19, 2009, plaintiffs Sherry Goldsby and Teyonna Olds, on behalf of themselves and the same class defined in the Initial Renosol Action, filed a separate action in the United States District Court for the Middle District of Alabama against the individual defendants, David Ash, Pete Bernier, Connie Messer, Wayne Savage, Ricky Brown and Robert Stricklin. (the "Individual Defendants Action"). (Doc. 90 at 8, 15-20). On November 5, 2009, the Bankruptcy Court confirmed the debtor's First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan") and

issued a Confirmation Order. (Doc. 91 at 2). On November 9, 2009, the Plan became effective, and Renosol emerged from Chapter 11. (*Id.*).

On January 19, 2010, the individual defendants filed a motion to transfer the Individual Defendant Action from the Middle District of Alabama to this Court, which was granted on April 22, 2010. (Doc. 90 at 13, 223-240). On June 9, 2010, following transfer of venue, the Individual Defendant Action (Civil Action No. 2:10-00187-C) was consolidated with the Initial Renosol Action (Civil Action No. 2:08-00148-KD-N) for all purposes (doc. 89).

On November 4, 2011, Cassandra Brown and Sarah Johnson filed Civil Action No. 2:11-0-0626-CG-C (the "Collective Defendants Action") in this Court against Renosol as well as four of the six individual defendants named in the Individual Defendants Action: Connie Messer, Wayne Savage, Ricky Brown and Robert Stricklin. Following an unopposed motion by the defendants, the Collective Defendants Action was consolidated for all purposes with the already consolidated Initial Renosol Action and the Individual Defendants Action (doc. 91).

Both consolidation orders [Doc. 89 and Doc. 91] granting defendants' unopposed motions to consolidate ordered that the Individual Defendants Action and the Collective Defendants Action, respectively, be consolidated with the Initial Renosol Action 'pursuant to Rule 42(a)(2), for all purposes, including discovery and trial." All three actions have been consolidated and are now before this Court as a single case.

On July 13, 2012, an Amended Complaint was filed against all defendants (doc. 125). On September 24, 2012, the undersigned entered an order (doc. 138) finding the

motion to dismiss (doc. 109) filed by the individual defendants moot. These defendants filed a motion to reconsider (doc. 140), which has been granted by separate order entered this day. All issues have now been fully briefed and are ripe for the Court's consideration.

2. Standard of Review.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) motion tests the legal sufficiency of a complaint; thus, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007))). Also, although a complaint need not contain "detailed factual allegations," it must include enough facts "to raise a right to relief above the speculative level, . . . on the assumption that all allegations in the complaint are true (even if doubtful in fact)[.]" Twombly, 550 U.S. at 555 (2007).

3. Analysis.

As stated above, defendants' motion to reconsider (doc. 140) the Court's prior order finding defendants' motion to dismiss moot has been granted. The Court has now carefully considered the issues raised in defendants' motion to dismiss (doc. 109)

pursuant to defendants' alternative "Motion for Leave to Renew the Motion to Dismiss" (docs. 140 and 144 at 4).

(a) Impact of the Renosol Chapter 11 Reorganization Plan.

One of the grounds on which the individual defendants seek dismissal of plaintiffs' FLSA claims is that "the claims alleged in this lawsuit were discharged, released, and enjoined pursuant to the Order confirming the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the 'Plan') entered by the Bankruptcy Court (as defined herein)" in the Renosol Chapter 11 case.[3] (Doc. 109 at 1-2, *citing* Doc. 109-1, Findings of Fact, Conclusions of Law and Order Confirming Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Confirmation Order"))[4]. The individual defendants contend

[3] The Court **grants** defendants' request that it take judicial notice of the bankruptcy proceedings and court proceedings referenced in their motion to dismiss. *See*, Oriz Credit Alliance v. Delta Resources, 54 F.3d 722, 725 (11th Cir. 1995)("[T]his Court may take judicial "notice of another court's order ... for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation and related filings.").

[4] The specific terms of the Confirmation Order on which the individual defendants rely are as follows:

> A. Discharge of [all Prepetition] Claims and Termination of Interests
>
> Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors, the Reorganized Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or noncontingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Interest based upon

(Continued)

such Claim, debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such Claim, debts, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.

(Doc. 109-1 at 358; "Discharge Provision").

E. Third Party Release

Notwithstanding anything contained herein to the contrary, on the effective date and effective as of the effective date, the releasing parties (regardless of whether a releasing party is a third party releasee) shall provide a full discharge and release (and each entity so released shall be deemed released by the releasing parties) to the third party releases and the debtor releasees and their respective property from any and all causes of action, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing as of the effective date in law, at equity, whether for tort, fraud, contract, violations of federal or state securities laws or otherwise, arising from or related in any way to the debtors, including those in any way related to the Chapter 11 cases or the plan; provided, however, that the foregoing "third party release" shall not operate to waive or release any causes of action of any releasing party: (1) arising under the exit facility or the new term loans; or (2) expressly set forth in and preserved by the plan, the plan supplement, or related documents. notwithstanding anything herein to the contrary, the plan does not release any claims or causes of action that the releasing parties, the debtors or the reorganized debtors may have now or in the future against the nonreleased parties.

Entry of the confirmation order shall constitute the bankruptcy court's approval, pursuant to Bankruptcy Rule 9019, of the third party release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the bankruptcy court's finding that the third party release is: (1) in exchange for the good and valuable consideration provided by the debtor releasees and the third party releasees; (2) a good faith settlement and compromise of the claims released by the third party release; (3) in the best interests of the debtors and all holders of claims and interests; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the releasing parties asserting any claim released pursuant to the third party release.

(Doc. 109-1 at 360; "Third Party Release"(re-formatted to lower case)).

53. "Debtor Releasees" means, collectively, (a) all current and former officers, directors, members, managers, and employees of the Debtors; and (b) all attorneys, financial advisors, advisors, accountants, investmentbankers, investment advisors, actuaries, professionals and affiliates of the Debtors, their subsidiaries, and each of their respective predecessors and successors in interest, and all of their respective current and former members (including ex officio members), managers, officers, directors, employees, partners, attorneys, financial advisors, accountants, managed funds, investment bankers, investment advisors, actuaries, professionals and affiliates, each in their respective capacities as such.

(Doc. 109-1 at 329).

(Continued)

that, even though they are not the debtors in the Bankruptcy proceedings, the Bankruptcy Court "expressly included employees of the debtors in the release provisions of the Plan." (Doc. 109 at 10). "Because plaintiffs' claims arose prior to the Confirmation Date, and because plaintiffs' claims are expressly included in the Article IX Release, Discharge, and Injunction Provisions, . . . plaintiffs' claims are among those discharged, released and enjoined by the Bankruptcy Court." Doc. 109 at 10-11, *citing* Morrow v. Green Tree Servicing, LLC, 360 F.Supp.2d 1246, 1248 (M.D. Ala. 2005)(dismissing claims against defendants that arose prior to confirmation of defendants'/debtors' plan of reorganization."). The Morrow case is distinguishable on two grounds. Plaintiff Christi L. Morrow not only brought her lawsuit under both the FLSA and state law against

---

> 141. "Releasing Parties" means, collectively, the Prepetition Administrative Agent, the Prepetition Credit Agreement Lenders, the Indenture Trustees, the DIP Agent, the DIP Lenders, the Canadian Information Officer, the Committee and members thereof, the Noteholder Steering Committee, Holders of Unsecured Note Claims that voted to accept the Plan, the non-Debtor parties to the Plan Support Agreements and all Holders of Claims or Equity Interests except any Holder of a Claim or Equity Interest: (a) that voted to reject the Plan; (b) that did not vote to accept the Plan but that timely elected on such Holder's Ballot to not participate in the Third Party Release set forth in Article IX.E hereof; or (c) that is in a Class that is deemed to reject the Plan.

(Doc. 109-1 at 335).

> 163. "Third Party Releasees" means, collectively: (a) the Prepetition Credit Agreement Lenders; (b) the Prepetition Administrative Agent; (c) the DIP Agent; (d) the DIP Lenders; (e) Holders of Unsecured Note Claims that voted to accept the Plan; (f) the non-Debtor parties to the Plan Support Agreements; (g) the Committee and the members thereof (in their capacities as such); (h) the Indenture Trustees; (i) the Canadian Information Officer; (j) the Noteholder Steering Committee; and (k) all attorneys, financial advisors, advisors, accountants, investment bankers, investment advisors, actuaries, professionals, current and former members (including ex officio members), officers, directors, employees, partners, and affiliates of each of the foregoing, each of the foregoing in their respective capacities as such.

(Doc. 109-1 at 337 ).

defendants for not properly compensating Morrow and other similarly situated employees, but then agreed with the defendants that the defendants' Chapter 11 reorganization plan "discharged the defendants from all claims and liabilities arising out of conduct occurring before September 15, 2003," the date the Plan was confirmed. 360 F.Supp.2d at 1248. There is no indication that the Morrow Court was presented with or addressed the issue of whether an FLSA claim can be released or discharged in the context of a bankruptcy reorganization.

The plaintiffs argue that their FLSA claims against these defendants are not released by the discharge and release provisions of the Renosol Plan. (Doc. 110 at 3). Plaintiffs specifically assert that their FLSA claims cannot be prospectively released by the employee but must, instead, be resolved after adversarial litigation and approval by the presiding Court or by the Secretary of Labor. *Id.*, *citing* Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 713-14 (1945)("[T]he attempted release and waiver of rights under the [FLSA] was absolutely void"); D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 115 (1946)(non judicial compromises that do not require the payment in full of unpaid wages and liquidated damages are no different than the releases in O'Neil that sought to waive liquidated damages); Barrentine v. Arkansas-Best Freight System, 450 U.S. 728, 740 (1981)(" FLSA rights cannot be abridged by contract or otherwise waived because this would "nullify the purposes" of the statute and thwart the legislative policies it was designed to effectuate."). Plaintiffs also rely upon Lynn's Food Stores, Inc. v. U.S. Dep't of Labor, 679 F.2d 1350, 1353-54 (11th Cir. 1982), in which the Eleventh Circuit declared:

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment supervised by the Secretary thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages.
>
> The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness. *See* Schulte, Inc. v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 928 n.8, 90 L.Ed. 1114; Jarrard v. Southeastern Shipbuilding Corporation, 163 F.2d 960, 961 (5th Cir. 1947).

679 F.2d at 1352-53 (footnotes omitted). *See also* Bonetti v. Embarq Management Co., 2009 WL 2371407, *3 (M.D. Fla. Aug. 4, 2009)("[I]nitiation of the action by the employees provides some assurance of an adversarial context [where] [t]he employees are likely to be represented by an attorney who can protect their rights under the statute [and any settlement proposed by the parties] is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching."). Defendants do not contend that plaintiffs' FLSA claims were ever subject to any form of adversary proceeding in the Bankruptcy Court but, nonetheless contend that the law set forth in Lynn's does not apply in a bankruptcy case. (Doc. 111 at 3-5).

In response (doc. 142) to the defendants' motion to reconsider, plaintiffs have filed a "Stipulation and Agreed Order Granting Relief From Stay" which was entered by the

same Bankruptcy Court that confirmed the Plan relied upon by the defendants for the premise that plaintiffs' FLSA claims have been "discharged, released, and enjoined." (Doc. 142-1). In this Order, the Bankruptcy Court not only refers to the consolidated actions which defendants seek to have this Court dismiss but declares that, under the Plan, "Plaintiffs [FLSA] claims are unimpaired, though subject to dispute by the Debtors, including Renosol . . .[and] Plaintiffs and Debtors agree that the District Court is the proper venue to resolve whether the Plaintiffs' claims have merit." (Doc. 142-1 at 3-4). The Bankruptcy Court retained jurisdiction to handle issues "regarding the payment of the Plaintiffs' claims upon a final determination by the District Court, whether by judgment or confirmation of a settlement." (Doc. 142-1 at 5).

Defendants' reply that this order in the Renosol bankruptcy case "does not prevent this Court from hearing the individual defendants' motion to dismiss." (Doc. 144 at ¶ 4). Defendants predicate their reply on the contention that they "were not parties to the Stipulation and Agreed Order." (*Id.*). It is these Defendants who nonetheless claim an entitlement to rely upon the "releases" and "discharges" defined in the Renosol Confirmed Plan even though they were not the "debtors" in the Renosol Chapter 11 bankruptcy. (Doc. 111 at 7-8).

The Bankruptcy Court has, however, now ordered that the stay be lifted to permit plaintiffs to pursue their "unimpaired" FLSA claims in this Court against the Debtors. The Bankruptcy Court has essentially acknowledged that plaintiffs' FLSA claims were never adjudicated in any adversary proceeding before that Court. If plaintiffs' claims

against the Debtors are "unimpaired," such claims against the individual Defendants are likewise "unimpaired."

(b) Indemnification and Subject Matter Jurisdiction.

The defendants further argue that "this Complaint is due to be dismissed . . .for lack of subject matter jurisdiction because the allegations in this lawsuit impact the bankruptcy estate . . . [and,] pursuant to the explicit terms of the Plan, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") maintains jurisdiction over matters affecting the bankruptcy estate." (Doc. 109 at 2, *citing* Doc. 109-1 at 363; A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 1007-08 (4th Cir. 1986)(Finding that liability of non-debtor defendants to whom debtor owed indemnity "would reduce and diminish the insurance fund or pool . . . and thereby affect the property of the debtor to the detriment of the debtor's creditors as a whole."). The defendants contend that any recovery against the defendants in their individual capacity still impacts the bankruptcy estate because "Renosol Seating has an obligation to defend and indemnify these individual managers." *Id*.

Plaintiffs agree that these defendants are being sued in their individual capacities and also correctly assert that "[t]he defendants have provided this Court with no evidence of a contract or written agreement between the Defendants and Renosol for indemnification." (Doc. 110 at 9). Consequently, this case is distinguishable from A.H. Robins, a case relied upon by the defendants, wherein the Court found as follows:

> [T]he only defendants other than the debtor, are the two Robins, Dr. Frederick A. Clark, Jr., Dr. Hugh J. Davis, and the debtor's insurer Aetna. So far as the suits against the two Robins and Dr. Clark, those defendants

> were entitled to indemnification by the debtor under the corporate by-laws and the statutes of Virginia, the State of debtor's incorporation,[FN13] and were, in addition, additional insureds under the debtor's insurance policy. Dr. Davis was the beneficiary of an express contract of indemnification on the part of Robins and was, under a compromise agreement with Robins and Aetna, an additional insured under Robins' insurance policy. The Manville court had granted a preliminary injunction in favor of defendants in the same position as these defendants, as we have seen, on facts similar to those here, finding that the requirements of possible irreparable harm "had been satisfied by the showing ... [that the suits against the defendants would represent] an immediate and irreparable impact on the pool of insurance assets, of the existence of sufficiently serious questions going to the merits," and of the tipping in the defendants' favor in the hardships in a balancing of the debtor's and the plaintiffs'. [Citation omitted].
>
> > FN13. It is the accepted practice for corporations such as the debtor to indemnify their directors, officers and employees for the costs of their defense for any judgment rendered against them in such cases. *See* A.D.M/ Corp. v. Thorison, 707 F.2d 25, 28 (1st Cir. 1983); 13 Fletcher, *Cyclopedia of the Law of Corporations,* § 6045.1 and 6045.3 (1980 ed.). Virginia, the State of the debtor's incorporation, has by statute empowered corporations of that State, by their charter, to provide for such indemnity. Section 13.1-3, 1 Virginia Code; Fletcher, *supra,* section 6045.2-235. The charter of the debtor, included in the record, provides such right of indemnification for the directors, officers and employees of the debtor in the broadest sense.

788 F.2d at 1007-1008. The defendants have cited to no similar state law basis for indemnification and have proffered no corporate documents demonstrating a basis for any entitlement to indemnification by Renosol.

To the extent the defendants rely upon the indemnity provision found in Article IX of the Plan, their reliance is misguided. *See* Doc. 109 at 361.[5] The indemnification

---

[5] The indemnification provision of the Plan, specifically Article IX.G provides, in pertinent part:

> On and from the Effective Date, and ***except as prohibited by applicable law***, the Reorganized Debtors shall assume all indemnification obligations currently in place,

(Continued)

provision set forth at Article IX.G of the Plan are available to the defendants only if not otherwise "prohibited by applicable law" and only if the defendants are sued in their "***capacity as an officer, director, member, employee, partner or agent of, or advisor to any Debtor.***" (Doc. 109-1 at 361). In other words, such indemnification would not be available to the defendants if applicable state law prohibits indemnity and to the extent that they are sued in their "individual capacities."

Plaintiffs are suing these defendants for violations of the FLSA under a "joint-employer theory." (Doc. 110) at 9, *citing* Patel v. Wargo, 803 F.2d 632, 637 (11th Cir. 1986). The Eleventh Circuit has now held:

> The FLSA creates a private right of action against any "employer" who violates its minimum-wage or overtime provisions. 29 U.S.C. § 216(b). The Act defines the term "employer" broadly to include "both the employer for whom the employee directly works as well as 'any person acting directly or indirectly in the interests of an employer in relation to an employee.' " Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1298 (11th Cir. 2011) (*quoting* 29 U.S.C. § 203(d)). Based on this broad definition, we have joined the "overwhelming weight of authority" and held that "a corporate officer with operational control of a corporation's

---

> whether in the bylaws, certificates of incorporation (or other formation documents), board resolutions, employment contracts or other agreements for the current and former directors, officers, managers, employees, attorneys, other professionals and agents of the Debtors and such current and former directors', officers', managers', and employees' respective Affiliates (collectively, the "Indemnified Parties"). Without limiting the foregoing and except as prohibited by applicable law, the Debtors shall indemnify and hold harmless, except as provided in the Plan Supplement, each of the Indemnified Parties for all costs, expenses, loss, damage or liability incurred by any such Indemnified Party arising from or related in any way to any and all Causes of Action whether known or unknown . . . including those arising from or related in any way to: … (2) any action or omission of any such Indemnified Party in such ***Indemnified Party's capacity as an officer, director, member, employee, partner or agent of, or advisor to any Debtor*** . . .

(Doc. 109-1 at 361, emphasis added).

> covered enterprise is an employer along with the corporation, ***jointly and severally liable under the FLSA for unpaid wages***." Patel v. Wargo, 803 F.2d 632, 637–38 (11th Cir. 1986) (*quoting* Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983)).

Lamonica v. Safe Hurricane Shutters, Inc., 2013 WL 811906, *6 (11th Cir., March 6, 2013)(emphasis added). In the event plaintiffs succeed in their FLSA claim against these defendants, the resulting joint and several liability will, under Alabama common law, preclude defendants' indemnification unless " 'the parties knowingly, evenhandedly, and for valid consideration, intelligently entered into an agreement' whereby one party agreed to indemnify the other for its negligent acts and omissions, and the agreement is expressed in 'clear and unequivocal language'." Royal Ins. Co. of America v. Whitaker Contracting Corp., 824 So.2d 747, 752-53 (Ala. 2002), *quoting* Industrial Tile, Inc. v. Stewart, 388 So.2d 171, 176 (Ala.1980). The defendants have submitted no such written indemnity agreement between themselves and Renosol and the release provision in the Renosol Bankrupcy Plan is a unilateral provision that neither reflects a mutual agreement between Renosol and the defendants nor recites any consideration for the provision. The defendants have, therefore, failed to establish any entitlement to indemnification in this case.

(c) Res Judicata.

The defendants also argue that plaintiffs are "barred from recovery against the individual named defendants based on the doctrine of res judicata." (Doc. 109 at 3; Doc. 111 at 6, *citing* In re Justice Oaks, II Ltd., 898 F.2d 1544, 1550 (11th Cir. 1990), for the proposition that "an order confirming a plan of reorganization has res judicata effect on

subsequent actions.) The plaintiffs argue that their FLSA claims against these defendants are neither released by the discharge and release provisions of the Renosol Plan nor barred by *res judicata*. (Doc. 110 at 3).

Plaintiffs assert that, in addition to the foregoing law limiting the manner in which an FLSA claim may be resolved, "the case against the named Defendants is not the same as the bankruptcy case against Renosol and [] there has been no final judgment on the merits [regarding their FLSA claims]." (Doc. 110 at 14-15). *See* In re Piper Aircraft Corporation, 244 F.3d 1289, 1299 (11th Cir. 2001)("[T]he confirmation process in a Chapter 11 case is primarily an inquiry into the viability of the proposed plan and the disposition of the debtor's assets, not the conduct of unrelated third parties.").

The Bankruptcy Court has specifically acknowledged that it is the role of this District Court for the Southern District of Alabama "to determine liability, if any, and liquidate the value, if any, of the Plaintiffs' [FLSA] claims." (Doc. 142-1 at 4). This is consistent with the law in this Circuit that FLSA claims cannot be prospectively released by the employee but must, instead, be resolved after adversarial litigation and approval by the presiding Court or by the Secretary of Labor. *See* Lynn's Food Stores, Inc. v. U.S. Dep't of Labor, 679 F.2d 1350, 1353-54 (11th Cir. 1982). *See also* Silva v. Miller, 307 Fed.Appx. 349, 351 (11th Cir. 2009)(same); Vinson v. Critter Control, Inc., 2012 WL 6737508, *1 (S.D. Ala., Dec. 28, 2012)(same). This also appears to be an acknowledgment that the FLSA claims have not been the subject of the requisite adversarial proceeding in the Bankruptcy Court.

The Bankruptcy Court's order also renders moot defendants' arguments concerning the authority of a bankruptcy court to issue injunctions or grant third party releases discharging the liability of non-debtors and whether such authority may only be challenged in the bankruptcy court prior to confirmation of the Plan. (Doc. 111 at 3-5).[6]

---

[6] Although defendants' have argued that "plaintiffs have cited no cases concerning FLSA claims in the context of bankruptcy to support [their] argument," defendants themselves have failed to cite the Court to any such authority. In general, the Court in In re Transit Group, 286 B.R. 811, 817-818 (Bankr. M.D. Fla. 2002), discussed the power of the bankruptcy courts to issue injunctions or grant third party releases discharging the liability of non-debtors as follows:

> Whether bankruptcy courts have the power to issue injunctions or grant third party releases discharging the liability of non-debtors centers primarily around conflicting interpretations of sections 105(a) and 524(e) of the Bankruptcy Code.[] In a Chapter 11 case, upon confirmation of a plan of reorganization, the debts of the bankrupt debtor no longer are subject to collection because of the discharge granted in section 1141(d). A section 1141(d) discharge applies only to claims against the bankrupt debtor. Further, the provisions of the confirmed plan bind all creditors, whether or not any particular creditor or class of creditors objects to the plan. Therefore, in the typical Chapter 11 case, the debtor's liabilities are discharged upon confirmation of the debtor's plan of reorganization. Creditors can expect to receive the payments offered in the confirmed plan and remain generally free to pursue all available remedies against other individuals or entities obligated, along with the bankrupt debtor, for any of the discharged debts.
>
> * * *
>
> The analysis justifying the issuance of these non-debtor releases begins with section 105(a) of the Bankruptcy Code. Section 105(a) grants a court broad equitable power "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." As a general rule, however, the equitable powers of bankruptcy courts must be exercised within the confines of the Bankruptcy Code. Thus, section 105(a) cannot be used to authorize any relief that is prohibited by another provision of the Code. Section 524(e) arguably restricts the broad equitable authority that section 105(a) confers on the courts. Section 524(e) provides that, "except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."
>
> * * *
>
> This Court . . . holds that section 524(e) does not act to bar non-debtor releases in appropriate circumstances if the releases are necessary to carryout the provisions of the Bankruptcy Code, as allowed in section 105. The difficulty comes in articulating the appropriate standard to apply in evaluating when the circumstances merit the issuance of non-debtor releases.

(Continued)

The Bankruptcy Court in this case has authorized the plaintiffs to proceed. The grounds asserted by the defendants to dismiss this action are, therefore, without merit.

CONCLUSION

For the reasons set forth above, it is the recommendation of the undersigned that defendants' motion to dismiss (doc. 109), as renewed by their motion to reconsider (doc. 140), be **DENIED**.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the magistrate judge.

**DONE** this 28th day of March, 2013.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

286 B.R. at 815-16 (footnote omitted). The Transit court, following a discussion of factors to be considered, concluded that, "at a minimum, the non-debtor releases must be necessary and fair [and] the granting of such releases is justified only in unusual circumstances." (*Id*. at 817). Such "unusual circumstances" do not exist in the case at bar.

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. **Objection**. Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[7] after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Opposing party's response to the objection**. Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. FED. R. CIV. P. 72; SD ALA LR 72.4(b).

3. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

**DONE** this the 28th day of March, 2013.

/s/ Katherine P. Nelson
**UNITED STATES MAGISTRATE JUDGE**

---

[7] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" FED. R. CIV. P 72(b)(2).