IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SHERRY GOLDSBY, et al, on behalf of herself and all others similarly situated; <br><br> Plaintiffs, <br><br> v. <br><br> RENOSOL SEATING, LLC, et al., <br><br> Defendants. | ) ) ) ) ) ) ) Civil Action No. 2:08-0148-KD-N[1] ) ) ) ) |

## PRELIMINARY APPROVAL ORDER

This action is before the Court on the second amended joint motion for approval of settlement agreement and dismissal of claims with prejudice (doc. 172); the parties' revised settlement agreement and release (doc. 172-3); the joint stipulation of dismissal for Lewis J. Freeman, Johnnie Hamilton, Rosalind Reeves, and Joyce Williams' claims against Renosol Seating, LLC (doc. 167) and the amended joint stipulation of dismissal and notice of dismissal[2] (doc. 169); and the notice of dismissal of the Plaintiffs' claims against the individual defendants David Ash, Pete Bernier, Connie Messer, Wayne Savage, Ricky Brown, and Robert Stricklin (doc. 168).

Upon consideration and for the reasons set forth herein, the second amended joint motion for approval of settlement agreement and dismissal of claims with prejudice and the revised

---

[1] *Sherry Goldsby, et al. v. David Ash, et al.*, Civil Action No. 10-0187-C (S.D. Ala. 2010) and *Cassandra Brown, et al. v. Renosol Seating LLC*, Civil Action No. 11-00626-CG-C (S. D. Ala. 2011) were consolidated with this action.

[2] Cowanda Cobb and Taika Hall initially joined the stipulation of dismissal. However, the parties determined that they had claims against Renosol. An amended notice and joint stipulation that did not include dismissal of Cobb and Hall's claims was filed. (Docs. 167, 169, 172)

settlement agreement and release (docs. 172, 172-3) are **preliminarily approved** pending notice of the settlement to the Opt-In Plaintiffs as set forth herein in Section III (D).

Pursuant to the joint stipulation of dismissal, the amended notice of dismissal and joint stipulation of dismissal, and the second amended joint motion for approval of settlement (docs. 167, 169, 172), and in the interests of fairness, the claims of Opt-In Plaintiffs Lewis J. Freeman, Johnnie Hamilton, Rosalind Reeves, and Joyce Williams against Renosol Seating LLC, are **dismissed without prejudice.**[3] *See* Fed. R. Civ. P. 41(a)(2)(". . . an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.")

The Plaintiffs' notice of dismissal without prejudice as to the individual defendants Ash, Bernier, Messer, Savage, Brown, and Stricklin is **MOOT**. (Doc. 168) [4]

I) Background

On March 18, 2008, Plaintiff Sherry Goldsby filed her complaint on her own behalf and on behalf of others similarly situated. She alleged claims for unpaid overtime under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* (FLSA) (Doc. 1). Defendant Renosol Seating, LLC, answered the complaint, admitted that it is an employer subject to the

---

[3] In the order denying the amended joint motion for approval, the Court explained that it was hesitant to apply either Rule 41(a)(1)(A)(ii) or Rule 41(a)(2) to the joint stipulation of dismissal without information as to the circumstance surrounding the decision by these four plaintiffs to dismiss their FLSA claims without prejudice and as to why their claims are addressed separately from the plaintiffs who are receiving compensation and agree to dismissal with prejudice. (Doc. 171) The parties now explain that Opt-In Plaintiffs Freeman and Reeves worked at Renosol prior to the requisite three-year time period at issue in this action. As to Opt-In Plaintiffs Johnnie Williams and Joyce Williams, plaintiffs explain that Renosol has no records of their having worked at Renosol and they did not provide any documentation otherwise. (Doc. 172) In this circumstance, the Court finds that dismissal without prejudice is proper.

[4] Previously, the Court found an inconsistency between the notice of dismissal <u>without</u> prejudice and the terms of the amended settlement agreement and release whereby these same defendants would be dismissed <u>with</u> prejudice. (Doc. 171) The parties now agree that the notice of dismissal without prejudice is moot because the individual defendants will be dismissed with prejudice upon approval of the revised settlement agreement and release. (Doc. 172, p. 7)

2

FLSA, denied all allegations as to any violation of the FLSA, and set forth its affirmative defenses. (Doc. 14) On December 12 2008, the Plaintiffs' motion for collective action pursuant to 29 U.S.C. § 216(b) was granted and this action was conditionally certified as a collective action under the FLSA and the parties were ordered to jointly submit a proposed class notice for approval. (Doc. 31) Plaintiffs submitted the proposed notice of collective action and proposed consent that was not opposed by Renosol. (Doc. 36) United States Magistrate Judge Sonja F. Bivins approved the notice and consent and counsel for Plaintiffs was directed to mail the documents to the potential Opt-In Plaintiffs identified by Renosol. (Doc. 37) Since that time, approximately two hundred and twenty five employees have opted in and filed consents to become party plaintiffs.

On July 7, 2009, Renosol filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, in the United States Bankruptcy Court for the Southern District of New York, Case No. 09-14326 (ALG). (Doc. 62) On July 14, 2009, this action was stayed pursuant to 11 U.S.C. §362(a). (Doc. 63)

While the bankruptcy action was pending, on October 19, 2009, Sherry Goldsby and Teyonna Olds filed an FLSA action on behalf of themselves and others similarly situated in the Middle District of Alabama against the individual defendants David Ash, Pete Bernier, Connie Messer, Wayne Savage, Ricky Brown and Robert Stricklin. This action was transferred to the Southern District of Alabama in June 2010. *Goldsby v. David Ash, et al.*, Civil Action No. 2:10-0187-C (S.D. Ala. 2010). Plaintiffs allege that these defendants "acted directly and/or indirectly in the interest of Renosol Seating, LLC in relation to Plaintiffs' employment, and [are] thus, subject to individual liability under the FLSA." (*Id*. at doc. 52, p. 124-127, First Amended Complaint). The individual defendants were identified as corporate officers, participating

3

shareholders and/or members, supervisors, managers and/or other employees of Renosol who exercised supervisory authority over the Plaintiffs including their compensation, were "employers" as contemplated under the FLSA, and were responsible in whole or in part for the violations alleged. (*Id.*) Plaintiffs alleged that defendants failed to pay overtime at the statutory rate in violation of 29 U.S.C. § 207 and failed to pay wages for some hours worked in violation of 29 U.S.C. § 206. (*Id.*) On June 9, 2010, after transfer of venue, that action was consolidated with this action for all purposes. (Doc. 89) The individual defendants filed a motion to dismiss but the motion was found moot. (Doc. 138) On motion for reconsideration, the motion was denied. (Doc. 155)

Also while the bankruptcy action was pending, on November 4, 2011, Cassandra Brown and Sarah Johnson filed an FLSA action in the Southern District of Alabama against Renosol and four of the six individual defendants: Messer, Savage, Brown and Stricklin. *Brown v. Renosol Seating, LLC, et al.,* Civil Action No. 2:11-0626-CG-C (S.D. Ala. 2011). The individual defendants were identified as "management-level employees" and "joint employer[s]. . . who supervise[d] Plaintiffs and/or other similarly situated". (Doc. 1) Plaintiffs alleged that defendants failed to pay overtime at the statutory rate in violation of 29 U.S.C. § 207 and failed to pay wages for some hours worked in violation of 29 U.S.C. § 206. (*Id*.) Defendant Renosol admitted that it was an employer subject to the FLSA but Renosol and the individual defendants denied all other allegations but for venue, jurisdiction, and Plaintiff's employment. Defendants raised eighteen affirmative defenses in their answer. In February 2012, that collective action was also consolidated for all purposes with this action. (Doc. 91)

In May 2012, the stay in bankruptcy was lifted and Plaintiffs filed an amended complaint against all defendants in July 2012. (Docs. 103, 125) Renosol and the individual defendants

4

answered the amended complaint in the main action and denied all allegations but for those related to residence and venue. Renosol admitted that it is an employer subject to the FLSA. (Doc. 132)

The parties filed a joint motion for approval of settlement agreement and dismissal of claims with prejudice and their settlement agreement and release (doc. 165, 165-1). Shortly thereafter, the parties filed an amended joint motion and an amended settlement agreement and release (Doc. 170; Doc 170-1) The motion and release were amended to include the claims of Cowanda Cobb and Taika Hall. The amended motion was denied for reasons set forth in the order denying the motion. (Doc. 171)

The parties have now filed a second amended joint motion for approval of settlement agreement wherein the parties address certain issues raised in the order denying the amended joint motion. (Doc. 172)[5] They have also filed a revised settlement agreement and release. (Doc. 172-3) Plaintiffs and Renosol state that they have reached a settlement as to all actions. Under the terms of the revised settlement agreement and release, Renosol has agreed to pay a total of $250,00.00 which is divided into Plaintiffs' damages in the total sum of $142,334.59 and $107,665.41 as an agreed attorney's fees and costs to Plaintiffs' counsel. The parties now agree and stipulate that the named Plaintiffs and the Opt-In Plaintiffs are similarly situated, that it is now appropriate for the Court to enter a final order certifying the action as a collective action for settlement purposes, and that the terms of this settlement set forth in the revised settlement

---

[5] The Court was unable to locate Debra Sarvory's consent to become a party plaintiff. (Doc. 171, p. 9) The parties inform the Court that her consent was docketed in *Goldsby v. Ash,* Civil Action No. 2:09-0975-TFM (M.D. Ala. 2009) (Doc. 11) before that action was transferred to this court and became *Goldsby v. Ash,* Civil Action No. 2:10-0187-C (S.D. Ala. 2010). The Court also questioned the necessity of the "Retention of Jurisdiction" provision. (Doc. 171, p. 9) The parties have now removed that provision from their settlement agreement.

agreement and release constitute a fair and reasonable resolution of a *bona fide* dispute under the FLSA. The parties request that the Court enter an order to approve the revised settlement agreement and release and dismiss this case with prejudice with each party to bear its own costs.

II) <u>Final certification as a collective action</u>

The Eleventh Circuit has suggested that the district courts "adopt" a "two-tiered approach to certification of § 216(b) opt-in classes . . . [as] an effective tool for district courts to use in managing these often complex cases." *Hipp v. National Life Ins. Co.*, 252 F 3d 1208, 1219 (11th Cir. 2001); [6]*Anderson v. Cagles, Inc.,* 488 F. 3d 945, 953 (11th Cir. 2007); *Morgan v. Family Dollar Stores, Inc.*, 551 F. 3d 1233, 1260 (11th Cir. 2008) ("while not requiring a rigid process for determining similarity, we have sanctioned a two-stage procedure for district courts to effectively manage FLSA collective actions in the pretrial phase"). The first tier, the conditional certification of the representative class or "notice" stage, is complete[7] and the action is now at the second tier when the Court must decide whether to grant final certification of the class. *Hipp*, 252 F. 3d at 1218.

At the second tier, before the settlement can be approved, the Court must decide whether final certification of the collective action is appropriate. *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1261 (11th Cir.2008). To do so, the Court may consider factors such as "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and

---

[6] Plaintiff Hipp brought an action under the Age Discrimination in Employment Act. The ADEA adopts certain provisions of the FLSA including the penalties provision found in 29 U.S.C. § 216(b). 29 U.S.C. § 626(b).

[7] "[T]he importance of certification, at the initial stage, is that it authorizes either the parties, or the court itself, to facilitate notice of the action to similarly situated employees." *Morgan v. Family Dollar Stores, Inc.*, 551 F. 3d 1233, 1259 (11th Cir. 2008).

procedural considerations[.]" *Id*. (quoting *Anderson v. Cagle's*, 488 F.3d 945, 953 11th Cir. 2007) (quoting with approval *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1103, (10th Cir. 2001)). Although the FLSA does not require class members to "hold identical positions", similarities must be more than "job duties and pay provision" and "encompass" Renosol's defenses "to some extent." *Id*. at 1261-1262 (citing *Anderson v. Cagle's*, 488 F.3d at 953). "[U]ltimately, whether a collective action is appropriate depends largely on the factual question of whether the plaintiff employees are similarly situated to one another." *Id.,* at 1262.

The parties agree and stipulate that Plaintiffs and the Opt-In Plaintiffs are similarly situated. The parties also agree and stipulate that it is appropriate for the Court to enter a final order certifying this action as a collective action for settlement purposes. (Doc. 172, p. 7; Doc. 172-3, p. 7) As to similarity, this action involves hourly employees employed at Defendant's Selma, Alabama manufacturing plant wo allege that Renosol "routinely provided unpaid rest and meal breaks of less than twenty minutes in duration in direct violation of 29 C.F.R. ¶ 785.19." (Doc. 172, p. 2) As to defenses available, Renosol raised numerous affirmative defenses, including those that were common to all Plaintiffs such as equitable defenses (estoppel, unclean hands), the good faith provisions of the Portal-to-Portal Act of 1947, and lack of knowledge that Plaintiffs were not properly compensated. (Doc. 132) Although certain defenses may have been individual to certain Plaintiffs such as whether they were employed by Renosol or statute of limitations defenses, these defenses appear to have held true for only four of the 230 employees who opted in to this litigation.[8]

Therefore, in consideration of the above, and fairness and procedural concerns attendant to the possibility of 226 separate lawsuits, the Court makes a preliminary determination that this

---

[8] Freeman, Reeves, Williams and Williams as discussed herein.

action should be finally certified as a collective action pursuant to § 216(b). *See Hosier v. Mattress Firm, Inc.*, 2012 WL 2813960, *3 (M.D. Fla. June 8, 2012) ("Here, the parties agree for purposes of settlement that all Qualified Claimants 'are similarly situated.' . . . Certification of this case also serves judicial economy. If each individual Qualified Claimant had to file individual lawsuits rather than participate in this action, the Court could potentially be faced with 775 individual cases").

      III) <u>Settlement</u>

In *Lynn's Food Stores, Inc.*, the Eleventh Circuit recognized two (2) methods for settlement of claims brought pursuant to the FLSA: Supervision by the Secretary of Labor or by court approval in a private action where plaintiff is represented by counsel. 679 F.2d 1350 (11th Cir. 1982). As to the latter, the parties may compromise and settle the FLSA claims but only with Court approval of the settlement agreement. The rationale is that:

> [s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

Lynn's Food, 679 F.2d at 1354. The circuit court concluded that:

> [o]ther than a section 216(c) payment supervised by the Department of Labor, there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.

*Id.* at 1355.

Thus, before the Court may approve the revised settlement agreement and release and enter a stipulated judgment, it must "scrutiniz[e]" the settlement for fairness" and determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA provisions. *Lynn's Food*, 679 F. 2d at 1353, 1355); *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1263 (M.D. Ala. 2003). In that regard, the Eleventh Circuit has noted that the FLSA "contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs.'" *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009). Therefore, "in any case where a plaintiff agrees to accept less than his full FLSA wages and liquidated damages, he has compromised his claim within the meaning of *Lynn's Food Stores*." *Vergara v. Delicias Bakery & Restaurant, Inc.*, 2012 WL 2191299, *1 (M.D. Fla. May 31, 2012).

A) <u>Bona fide dispute</u>

Section 216(b) of the FLSA provides that "... [a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages..." 29 U.S.C. § 216(b). Section 207 is captioned "Maximum Hours" and paragraph (a)(1) states as follows:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Upon review of the amended complaint, answer, and the second amended joint motion to approve settlement, the Court finds that there is a "bona fide dispute" as to whether Renosol and the individual defendants violated the FLSA by failing to pay Plaintiffs for overtime work. In the amended complaint in the main action, Plaintiffs allege that Renosol "failed to pay Plaintiffs and others similarly situated, overtime at the statutory rate of time and one-half for all hours worked in excess of 40 each week in direct violation of 29 U.S.C. § 207" ("Maximum hours") and that Renosol "failed to pay any wages for some hour worked in direct violation of 29 U.S.C. § 206." ("Minimum wage") (Doc. 125, p. 6) Renosol and the individual defendants denied these allegations and raised sixteen specific defenses and reserved their right to assert further defenses as appropriate. (Doc. 132) Also, in the consolidated actions, *Goldsby v. David Ash, et al.*, Civil Action No. 2:10-0187-C (S.D. Ala. 2010) and *Brown v. Renosol Seating, LLC, et al.,* Civil Action No. 2:11-0626-CG-C (S.D. Ala. 2011), Plaintiffs alleged that defendants failed to pay wages for some hours worked in violation of 29 U.S.C. § 206.

However, in the second amended joint motion to approve settlement, the parties clarified that the evidence revealed that Plaintiffs were properly paid a minimum wage and therefore, the claims in this action involved only claims for unpaid overtime compensation.[9] The parties state that after extensive document and interrogatory discovery including the production of Plaintiffs' pay records, they continued to disagree over the merits of Plaintiffs' claims and the amount of overtime compensation owed to Plaintiffs. Plaintiffs allege that "at all times relevant to this action, Plaintiffs were routinely provided unpaid rest and meal breaks of less than twenty minutes in direct violation of 29 CFR §785.18." (Doc. 172, p. 2) Thus, there is a bona fide

---

[9] In the order denying the amended joint motion to approve settlement, the Court explained that the pleadings and motions were not clear as to whether Plaintiffs claimed unpaid minimum wages in addition to unpaid overtime wages. (Doc. 171, p. 8)

dispute over FLSA provisions.

B) <u>Fair and reasonable resolution</u>

The Court is obligated to "scrutiniz[e]" the settlement for fairness" and determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA provisions. *Lynn's Food*, 679 F. 2d at 1353, 1355). In *Silva*, the circuit court explained that the FLSA imposes "a duty to review the compromise" of an FLSA claim. 307 Fed. Appx. at 352. As a framework, the Court may consider the following factors: "1) the existence of fraud or collusion behind the settlement; 2) the complexity, expense, and likely duration of the litigation; 3) the stage of the proceedings and the amount of discovery completed; 4) the probability of plaintiff's success on the merits; 5) the range of possible recovery; and 6) the opinions of the counsel." *Dees v. Hydradry,* Inc., 706 F.Supp.2d 1227, 1241 (M.D. Fla. 2010) (finding that the factors for evaluating the fairness of a settlement in a class action were applicable in an FLSA action); *Mason v. Wyndham Vacation Ownership, Inc.*, 2012 WL 570060 (M.D.Fla. Feb. 17, 2012).

Additionally, the Court may approve the settlement of FLSA claims where there are "problems" which warrant a compromise and settlement. *Moreno v. Regions Bank*, 729 F.Supp.2d 1346 (M.D.Fla.2010) ("Problems, for example, in proving hours-worked or 'non-exempt' status—or the presence of some other lawful defense to payment (if any)—may warrant a reasonable compromise, if the court approves."); *Meek v. Wachovia Corporation*, 2007 WL 2728404, 2 (M.D. Fla. Sept. 17, 2007) ("The settlement to Plaintiff is a reflection of the difficulties of proof Plaintiff faced, should he proceed to trial, and makes allowances for the inherent difficulties and costs of a trial.").

Upon consideration of the joint motion, and the factors identified in *Dees* and *Moreno*,

especially the possible complexity and expenses of the litigation, the probability of Plaintiffs' success on the merits, and certain problems that warrant a compromise, the Court finds that Plaintiffs' compromise and settlement is a fair and reasonable resolution of their FLSA claims. Plaintiffs initially sought unpaid minimum wages, unpaid overtime wages, and liquidated damages. After discovery and review of the evidence, they no longer seek unpaid minimum wages and agree to receive approximately 60% of their respective unpaid overtime wages. The parties explain that the decision to compromise was based, in part, on the uncertain area of the law regarding the interplay between 29 C.F.R. § 785.18 and § 785.19. Section 785.18 provides that short rest periods of 5 to 20 minutes duration are customarily paid as working time. Section 785.19 provides that bona fide meal periods are not paid as working time and that 30 minutes or more is generally long enough to qualify as a bona fide meal period. However, § 785.19 also states that meal periods that last less than 30 minutes, such as the alleged 20 minute meal period at issue in this case, where an employee is completely relieved from work may be a bona fide meal break where certain conditions are met. The parties further explain that the issues in the action appear to be a case of first impression in this jurisdiction, that there is minimal case law on the issue, and that the Department of Labor's Field Operation Handbook also does not provide any certainty as to whether the meal breaks at issue in this case constitute FLSA violations. This uncertainty regarding the law, the potential ambiguity of facts, and the increased litigation expenses for this action and any appeal, lead Plaintiffs to compromise their claims and settle this action.

      The parties also explained that the Plaintiffs compromised their claim and agreed to forego their statutory right to liquidated damages because of the uncertainty in the law discussed above and the likelihood that liquidated damages would not be recovered at trial. The parties set

forth that Renosol would have a strong argument that its failure to pay Plaintiffs' overtime was in good faith and that it had reasonable grounds to believe that the 20 minute meal break was a bona fide meal period.

C. Attorneys' fees and costs

The FLSA requires that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *Silva*, 307 Fed. Appx. at 351; *see also Norman v. Alorica, Inc.*, 2012 WL 5452196 (S.D.Ala. Nov. 7, 2012); *Wolff v. Royal American Mgt., Inc.,* 2012 WL 5303665 (S .D.Ala. Oct. 25, 2012). Previously, the Court found that it could not assess the reasonableness of the attorneys' fees and costs because the parties agreed to a lump sum of $250,000.00 and the amount of attorneys' fees would fall when Plaintiffs' were awarded damages. (Doc. 171) The Court questioned whether the attorneys' fees and costs were separately negotiated without regard to the amount paid to the Plaintiffs. (Doc. 171) The Court also explained that it must be sure that the agreed upon attorneys' fees were not tainted by any conflict of interest. Also, because the Court could not determine what claims were covered by the total damages awarded to each Plaintiff, the Court could not resolve the whether the agreed upon attorneys' fees were reasonable. *Id.*

The parties have now sufficiently explained that Plaintiffs' total damages are for 60% of their unpaid overtime compensation, that their claims for unpaid minimum wages were not supported by the evidence, and that they compromised their claim for liquidated damages as part of the settlement agreement. The Court now turns to the Plaintiffs' claim for attorneys' fees and costs and the additional evidence provided in support of their claim. Plaintiffs seek a total attorneys' fee and costs in the agreed-upon amount of $107,665.41, which is made up of

$94,965.41 for attorney and paralegal fees and $12,700.00 for costs and expenses. Deducting $107,665.41 from the $250,000.00 settlement amount yields $142,334.59, the damages awarded to the Plaintiffs. (Doc. 172, 172-3) In support, Plaintiffs provide the Court with the affidavit of counsel wherein he states that the three attorneys incurred a total of 222 hours of work and the three paralegals incurred a total of 549 hours of work. Counsel states that the attorneys' hourly rates are $450.00 and the paralegals' hourly rates are $90.00. The total amount of attorneys' fees incurred is $149,310.00. As to costs, counsel states that a total of $12,700.00 has been incurred. (Doc. 172-1) In the joint motion, the parties state that due to the reduction of attorneys' fees from $149,310.00 to $94,965.41, the effective hourly rate for the attorneys is approximately $205.00 per hour and $90.00 per hour for the paralegals.

Customarily, this Court has required the plaintiffs to provide an itemized billing statement which describes the work actually performed during the hours invoiced in order for the Court to determine the reasonableness of the hours expended. *Padurjan v. Aventura Limousine & Transportation Service, Inc.*, 441 Fed. Appx. 684, 686 (11th Cir.2011) (Applying the lodestar method and stating that in order to "calculate reasonable attorneys' fees, courts are to consider the number of hours reasonably expended on the litigation, together with the customary hourly rate for similar legal services."); *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir.2008) (citation omitted) (Multiplying the reasonable hourly rate by the hours reasonably expended yields the "lodestar" which is the "starting point" for the Court's determination). If the description of the work actually performed shows that it was redundant, excessive, or unnecessary, then those hours would not be reasonably expended and thus, could not form the basis for determining a reasonable attorneys fee under the lode star method. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Norman v. Hous.*

*Auth. of the City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir.1988) ((explaining that the Eleventh Circuit "mirrored the evolving standards of the Supreme Court" and its election of the lodestar method and that the prevailing party cannot recover hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel.") The Court has also required an itemized statement of the costs because the costs allowed in an FLSA action are those set forth in 28 U.S.C. § 1920. *See Mock v. Bell Helicopter Textron, Inc.,* 456 Fed. Appx. 799, 802 (11th Cir.2012) (finding that costs pursuant to 29 U.S.C. § 219(b) are limited by 28 U.S.C. § 1920) (citing *Glenn v. General Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir.1988).

Also, the reasonable hourly rate is the prevailing market rate "in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *American Civil Liberties Union v. Barnes*, 168 F.3d 423, 436 (11th Cir.1999); *Norman*, 836 F.2d at 1299. In this case, the relevant legal community is the Southern District of Alabama. *See Barnes*, 168 F.3d at 437 (providing that "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." (citation omitted)). However, the parties have provided the Court with the hourly rate of $450.00 invoiced by its attorneys and $90.00 invoiced by its paralegals, both of which exceed this Court's customary hourly rates for attorneys, which ranges from $250.00 to $300.00 for more experienced and qualified attorneys, $150.00 to $225.00 for less experienced attorneys and associates with few years of practice, and $75.00 for paralegals. *See McCants v. Fred's of Tennessee, Inc.*, 2011 WL 172900, *4 (S.D. Ala. Jan. 16, 2013) (slip copy) (finding $250.00 per hour for Banks C. Ladd, a partner with eleven years experience in employment litigation and a specialization in FLSA cases was a reasonable hourly rate); *Johnson v. TMI Management*

15

*Systems, Inc.*, 2012 WL 4435304, *1 (S.D. Ala., Sept. 26, 2012) (finding $75.00 per hour was a reasonable hourly rate for paralegal time where movant did not show that paralegals possessed special qualification or expertise to support an award of a higher hourly rate).

However, "[w]hen a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350. Since Plaintiffs have already cut their total attorneys' fees by $54,344.59[10] in order to come within the agreed-upon settlement amount of $250,000.00, the Court finds that Plaintiffs have engaged in their own "across-the-board" cut, and the Court need not inquire further. Additionally, although the Plaintiffs' compromise of their FLSA claims appears to have increased the amount payable to their attorneys, the compromised does not appear to be tainted by a conflict of interest, but rather was based upon a fair and reasonable assessment of the litigation and the possible recovery to the Plaintiffs. Accordingly, the attorneys' fees[11] and costs in the reduced amount of $107,665.41 are preliminarily approved as reasonable and awarded to the Plaintiffs.

D. <u>Fairness hearing and notice to the Opt-In Plaintiffs</u>

The parties did not move the Court to set a fairness hearing and did not provide the Court with any evidence that the Opt-In Plaintiffs have had an opportunity to review the revised settlement agreement and release. In the revised settlement agreement and release, the parties agree that because the agreement must be approved by the Court, and because "it is impossible or impractical to have each Opt-In Plaintiff execute this Agreement", the named Plaintiff

---

[10] Deducting $94,965.41, the compromised attorneys' fee, from $149,310.00, the fees actually incurred, yields $54,344.59.

[11] The Court finds that the paralegal rate of $90.00 is not commensurate with the prevailing rate in this district, but in consideration of the lower attorney hourly rate, the Court does not find that an adjustment is necessary.

16

Goldsby will sign on their behalf. (Doc. 172-3, p. 10)  Goldsby states that she has "been given authority to sign this Agreement on behalf of the Opt-In Plaintiffs by the Consent to Join forms filed with the Court in the Litigation." *Id.*  The parties also agree that to "confirm their agreement to the terms of this Settlement Agreement and Release", each settlement check will contain language to the effect that signing, depositing or cashing the check confirms the release of Renosol as approved by the Court. *Id.*

The Court has reviewed many of the FLSA collective action cases in this circuit as well as others, and finds that the majority of the courts approve a settlement only after notice has been provided to the opt-in plaintiffs and a fairness hearing conducted, or at the least, what is required is a statement to the Court that the opt-in plaintiffs have had notice of the settlement and an opportunity to object. *See Hosier v. Mattress Firm, Inc.*, 2012 WL 2813960, *3 (M.D. Fla. June 8, 2012) (approving the settlement after notice to the opt-in plaintiffs and a fairness hearing); *Wineland v. Casey's General Stores, Inc.*, 267 F. R.D. 669, 672  (S.D. Iowa 2009) ("Of 75,994 putative class members provided with notice of the settlement, 9,469 submitted timely claim forms, and only 28 opted-out of the settlement.")   In *Moore v. Ackerman Inv. Co.*, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009), the district court explained that 29 U.S.C. § 216(b) "does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b). Nevertheless, courts entertaining a proposed settlement in a § 216(b) case must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned."  *Id*. at *2. However, in reaching its decision to approve the settlement, the district court stated that "a substantial majority of the 'opt-in' plaintiffs (64%) have responded to the proposed settlement

17

and those responding have overwhelmingly (98% of responding plaintiffs and 63% of all plaintiffs) approved the proposed settlement[.]" *Id*. Thus, even where a fairness hearing was not held, the district court in *Moore* ascertained that the opt-in plaintiffs had received notice of the proposed settlement and had an opportunity to object. This Court has also approved a settlement in a collective action upon proof of notice to the opt-in plaintiffs but without a fairness hearing. *Longcrier v. HL-A Co., Inc.* Civil Action No. 2:08-0011-WS-C (S.D. Ala. 2009) (Doc. 90, order granting joint motion to approve settlement; Doc. 84, joint motion to approve settlement with signed agreements attached).

The Court finds that notice of the settlement and an opportunity to file a written objection should be provided as to all Opt-In Plaintiffs. Accordingly, the parties are **ORDERED** to submit on or before **December 18, 2013,** a **draft proposed notice** to the Opt-In Plaintiffs. The notice shall contain sufficient information to apprise the Opt-In Plaintiffs as to the terms of the settlement and that any objection to the settlement must be filed with the Court by **January 24, 2014.** Upon approval of the notice, the parties will be **further ordered** to mail notice of the revised settlement agreement and release to the Opt-In Plaintiffs as collective class members by first class U.S. Mail to their last known addresses.

DONE and ORDERED this the 13th day of December 2013.

                                        **/s/ Kristi K. DuBose**
                                        **KRISTI K. DuBOSE**
                                        **UNITED STATES DISTRICT JUDGE**